IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHARLES J. TURNER, individually ) <br> AND as a Personal Representative ) <br> of The Estate of DAE'VID LEI ) <br> GUEVARA, Deceased, ) <br> ) <br>       Plaintiffs, ) <br> ) <br>    v. ) <br> ) <br> HAWAII FIRST INC., A ) <br> Corporation; DOES 1-30, ) <br> ) <br>      Defendants. ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> _____ ) | Civ. No. 11-00332 ACK-BMK |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**PROCEDURAL BACKGROUND**

Plaintiffs' First Amended Complaint ("FAC") was filed on May 7, 2012. (Doc. No. 44).

Defendant's Motion To Dismiss the First Amended Complaint ("Motion") was filed on May 14, 2012. (Doc. No. 46.) The Motion To Dismiss was supported by a Concise Statement of Facts, declarations by counsel and by Albert Denys, Defendant's Chief Operating Officer, and various exhibits. (Doc. No. 47.) Plaintiffs filed an Opposition to the Motion To Dismiss ("Opp'n")

on September 17, 2012, which incorporated by reference the
Concise Statement of Facts, declarations, and exhibits that
Plaintiffs filed in support of their Motion for Summary Judgment.
 (Doc. No. 58; Opp'n at 2.)[1] Defendant filed a Reply in support
of its Motion To Dismiss on September 25, 2012. (Doc. No.
60.)

Counsel clarified during the hearing on the Motion
conducted before this Court on October 9, 2012, that despite its
title the Motion was both a motion to dismiss and, in the
alternative, a motion for summary judgment.  The Court notes that
both parties filed Concise Statements of Facts in support of
their papers and that, although its title was lacking, the body
of the Motion discussed Federal Rule of Civil Procedure 56 and
the standard of review for summary judgment motions. The Court
finds that Plaintiffs had sufficient notice that Defendant was
moving for summary judgment in the alternative, and therefore
will treat Defendant's Motion as a motion to dismiss the

---

[1] Plaintiffs filed their Motion for Summary Judgment and
FRCP 56(g) Determination on August 31, 2012. (Doc. No. 53.)  The
Motion for Summary Judgment was supported by a Concise Statement
of Facts, declarations by counsel and Plaintiff Charles J.
Turner, and various exhibits.  (Doc. No. 54.)  Defendant filed an
Opposition to the Motion for Summary Judgment on September 17,
2012.  (Doc. No. 56.)  The Opposition to the Motion for Summary
Judgment was supported by a Concise Statement of Facts, a
declaration of counsel, and various exhibits.  (Doc. No. 57.)
Plaintiffs filed a Reply in support of their Motion for Summary
Judgment on September 24, 2012.  (Doc. No. 59.)

complaint, or in the alternative for summary judgment on Plaintiffs' claims.

## FACTUAL BACKGROUND[2/]

This case concerns fees assessed against Plaintiffs as members of a condominium association, which Defendant as managing agent of the condominium project attempted to collect.

Plaintiff Charles J. Turner appears on his own behalf and as representative of the estate of his domestic partner, Dae'vid Lei Frank Guevara, who died on December 18, 2011. (FAC ¶¶ 2, 79.) In October 2006, Plaintiffs purchased a condominium in Ewa Colony Estates and thus became members of the Association of Apartment Owners of Ewa Colony Estates ("Association"). (Id. ¶ 10.) The governing documents of the Association require members to pay various assessments for communal expenses. (Id. ¶¶ 11-13 & Exs. A,10, A.25.)

Defendant Hawaii First, Inc. is a managing agent for condominium associations and collects both delinquent and non-delinquent bills on the Association's behalf. (Id. ¶¶ 14, 26, 27 & Exs. 45a-46.)

---

[2/]The facts as recited in this Order are for the purpose of disposing of the instant motions and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

In late February or early March, 2010, Plaintiffs filed in state court a request for a temporary restraining order against the president of the Association and two family members, alleging that the president and family members had physically attacked and harassed Mr. Guevara. (Id. ¶ 16.) On March 15, 2010, a hearing was held regarding Plaintiffs' request, at which Plaintiffs spoke to the Association's attorney and "verbally repudiated their obligation to pay all attorney's fees for legal services related to the condominium project including the subject injuries and harassment." (Id. ¶¶ 17-18.)

On March 30, 2010, the Association's counsel billed the Association $247 for work relating to the alleged attack on Plaintiff Guevara. (Id. ¶ 23.) On May 21, 2010, the Association paid its counsel $258.64, which amount included the $247 for the work billed on March 30. (Id. ¶ 24.)

Sometime after May 21, 2010, Defendant "acquired" this legal debt from the Association. (Id. ¶ 25.) On May 25, 2010, Defendant sent a bill to Plaintiffs which included a charge of $258.64 labeled "Legal 04/30/10 St: 5". (Id. ¶ 28 & Ex. A.47.) This charge was the debt at issue in this case ("Debt").[3]

---

[3]The rest of Plaintiffs' allegations in the First Amended Complaint, which relate to Defendant's attempts to collect the Debt, are not relevant for the disposition of the instant Motions.

In their First Amended Complaint, Plaintiffs bring fourteen[4/] claims under the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e-h, alleging at least four kinds of FDCPA violations: making false or misleading representations; employing unfair practices; failing to give required notices; and applying a payment to a debt still in dispute. (FAC ¶¶ 35-68.) Plaintiffs also bring three claims under Hawaii state law for unfair or deceptive acts or practices, intentional infliction of emotional distress, and wrongful death. (Id. ¶¶ 69-87.)

## SUBJECT MATTER JURISDICTION

As a preliminary matter, Defendant characterizes its Motion To Dismiss as, in part, one for lack of subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), while Plaintiffs argue that it is a motion to dismiss for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (See Motion at 5; Opp'n at 3.) When deciding a "factual" Rule 12(b)(1) motion, the burden is on the nonmoving party to prove that the court has jurisdiction, see Savage v. Glendale Union High Sch., 343 F.3d 1036, 1040 n.2 (9th Cir. 2003); the court may consider evidence outside the pleadings and should not presume that the allegations of the

---

[4/]The claims in the First Amended Complaint appear to be misnumbered.

5

complaint are true, <u>see</u> <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th
Cir. 2000); <u>McCarthy v. United States</u>, 850 F.2d 588, 560 (9th
Cir. 1988). In contrast, when deciding a 12(b)(6) motion, the
court generally may only consider the face of the complaint and
any documents attached to or referenced in it; the court should
presume that the allegations of the complaint are true and should
construe those allegations in the light most favorable to the
nonmoving party. <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979,
988 (9th Cir. 2001) (citing <u>Enesco Corp. v. Price/Costco, Inc.</u>,
146 F.3d 1083, 1085 (9th Cir. 1998)).

        Defendant's attempt to challenge the Court's subject
matter jurisdiction is unavailing. Defendant argues that the
Court does not have jurisdiction over Plaintiffs' FDCPA claims
because Defendant is not a "debt collector" under the FDCPA's
meaning, and therefore is not subject to its provisions. But the
Ninth Circuit, ruling on this same jurisdictional argument under
the FDCPA, held that "whether [Defendant] is a 'debt collector'
under the meaning of the FDCPA is not a jurisdictional fact, but
rather an element of [Plaintiffs'] claim under the FDCPA."
<u>Bennett v. Am. Med. Response, Inc.</u>, 226 Fed. App'x 725, 727 (9th
Cir. March 27, 2007) (unpublished) (citing <u>Arbaugh v. Y & H
Corp.</u>, 546 U.S. 500, 514-15 (2006)); <u>see Fitzpatrick v. Ass'n of
Apartment Owners of Kai Malu</u>, No. Civ 10-00569, 2011 WL 197222,
at *1 (D. Haw. Jan. 19, 2011) ("[Defendants] argue that they are

6

not 'debt collectors' under the meaning of the FDCPA . . . . Notwithstanding the asserted jurisdictional basis of the motion, these Defendants are actually arguing that statutory requirements are not satisfied, not that there is no federal jurisdiction question. Therefore, this motion is more properly viewed as a motion to dismiss for failure to state a claim.")

In Arbaugh, the Eastern District of Louisiana granted a post-trial motion to dismiss for lack of subject matter jurisdiction in a Title VII sexual harassment case, on the grounds that Title VII defines an "employer" as "a person . . . who has fifteen or more employees," and the defendant in that case employed fewer than fifteen people; the Fifth Circuit affirmed. 546 U.S. at 508-09. The Supreme Court reversed and remanded, pointing out that Congress could have made Title VII's employee-numerosity requirement jurisdictional, but did not: the definition "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." Id. at 515 (quoting Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394 (1982)). The Court held that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." 546 U.S. at 515.

Like the employee-numerosity requirement in Arbaugh, the FDCPA's definition of "debt collector" in 15 U.S.C. §

7

1692a(6) "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." 546 U.S. at 515. Under <u>Arbaugh</u>, courts must therefore treat the FDCPA's definition of "debt collector" as "nonjurisdictional in character." <u>Id.</u>; see <u>Daley v. Provena Hosps.</u>, 88 F. Supp. 2d 881, 885 (N.D. Ill. 2000) (deciding that "[b]ecause the defendants in this case are questioning the applicability of the FDCPA, the court will review defendants' motion to dismiss pursuant to Rule 12(b)(6)" rather than Rule 12(b)(1)).

Because the FDCPA's definition of a debt collector is "nonjurisdictional," the Court finds that it has subject matter jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), and over their state law claims under 28 U.S.C. § 1367.

## STANDARD OF REVIEW

### Motion to Dismiss Under Rule 12(b)(6)

Rule 12(b)(6) permits dismissal of a complaint that fails "to state a claim upon which relief can be granted." On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996). Nonetheless, conclusory allegations of law, unwarranted deductions of fact,

8

and unreasonable inferences are insufficient to defeat a motion to dismiss. See Sprewell, 266 F.3d at 988; Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology, 228 F.3d 1043, 1049 (9th Cir. 2000). Moreover, the court need not accept as true allegations that contradict matters properly subject to judicial notice or that contradict the exhibits attached to the complaint. Sprewell, 266 F.3d at 988.

In summary, to survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). Dismissal is appropriate under Rule 12(b)(6) if the facts alleged do not state a claim that is "plausible on its face." Id. at 547. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal,

556 U.S. 662, 679 (2009) (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

"Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009) (internal quotation marks omitted). "But courts have discretion to deny leave to amend a complaint for futility, and futility includes the inevitability of a claim's defeat on summary judgment." Johnson v. Am. Airlines, Inc., 834 F.2d 721, 724 (9th Cir. 1987) (citations and internal quotation marks omitted).

**Motion for Summary Judgment**

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). Summary judgment is therefore appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion," and can do so in either of two ways: by "citing to particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case.  A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).[5/]  Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323; Miller v. Glenn Miller Prods., 454 F.3d 975, 987

---

[5/]Disputes as to immaterial facts do "not preclude summary judgment."  Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986).

(9th Cir. 2006).  The moving party may do so with affirmative evidence or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.[6/]  Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  See Celotex, 477 U.S. at 324; Matsushita Elec., 475 U.S. at 586; Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).[7/]

---

[6/]When the moving party would bear the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial.  See Miller, 454 F.3d at 987 (quoting C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)).  When the nonmoving party would bear the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party. See id. (citing Celotex, 477 U.S. at 325).

[7/]Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987); Johnson v. Wash. Metro. Area Transit Auth., 883 F.2d 125, 128 (D.C. Cir. 1989) ("The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury."), cited in Villiarimo, 281 F.3d at 1061.

The nonmoving party must instead set forth "significant probative evidence" in support of its position.  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l, 391 U.S. at 290).  Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. See Celotex, 477 U.S. at 322.

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See T.W. Elec. Serv., 809 F.2d at 630-31.[8/]  Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied.  Anderson, 477 U.S. at 250-51.


## DISCUSSION

### Motion To Dismiss

Plaintiffs' federal claims allege that Defendant violated multiple provisions of the FDCPA.

The FDCPA was enacted "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain

---

[8/]At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence.  See Anderson, 477 U.S. at 249; Bator v. Hawaii, 39 F.3d 1021, 1026 (9th Cir. 1994).

13

from using such practices are not competitively disadvantaged, and to promote consistent State action to protect consumers." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, __ U.S. __, __, 130 S.Ct. 1605, 1608 (2010) (citing 15 U.S.C. § 1692(e)). As a threshold matter, the FDCPA applies only to a "debt collector" who engages in practices prohibited by the Act in an attempt to collect a consumer debt. See Rowe v. Educ. Credit Mgmt. Corp., 559 F.3d 1028, 1031 (9th Cir. 2009) ("The FDCPA regulates the collection of 'debts' by 'debt collectors' by regulating the number and types of contacts a debt collector may make with the debtor."). Thus, a complaint under the FDCPA may be dismissed if it fails to allege that the defendant meets the statutory definition of a "debt collector."

The FDCPA defines "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . .

15 U.S.C. § 1692a(6). The Act therefore is not limited in application to collection agencies, but rather "regulates the conduct of 'any person' in 'any business' whose (1) principal purpose is debt collection, or (2) who regularly collects or attempts to collect debts, indirectly or directly." Romine v. Diversified Collection Servs., Inc., 155 F.3d 1142, 1146 (9th Cir. 1998) (citing 15 U.S.C. § 1692a(6)). Possession of the debt

14

or personal financial benefit from the satisfaction of the debt is not necessary for liability as a "debt collector" to attach under the FDCPA. Id. (citing Heintz v. Jenkins, 514 U.S. 291, 297 (1995) (attorneys litigating cases on behalf of clients may fall within the FDCPA definition of "debt collector" because "litigating . . . seems simply one way of collecting a debt.")).

Exempted from the definition of a debt collector, however, is:

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation . . . ; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person . . . .

15 U.S.C. § 1692a(6)(F)(i), (iii).

Defendant argues that it is does not fall under the FDCPA's definition of a 'debt collector" because it meets the two exemptions above: (1) its collection activities were "incidental to a bona fide fiduciary obligation"; and (2) the bills at issue here "concern[] a debt which was not in default at the time it was obtained." See 15 U.S.C. § 1692a(6)(F)(i),(iii).

**Collection Incidental to a Bona Fide Fiduciary Obligation**

Two requirements must be satisfied for an entity to come within the exception to the FDCPA for collection activities "incidental to a bona fide fiduciary obligation": first, the entity must have a "fiduciary obligation"; second, the entity's collection activity must be "incidental to" its "fiduciary

15

obligation." <u>Rowe</u>, 559 F.3d at 1032 ; <u>see also</u> <u>Franceschi v.</u>
<u>Mautner-Glick Corp.</u>, 22 F. Supp. 2d 250, 254 (S.D.N.Y. 1998)
("The legislative history of the FDCPA confirms that Congress did
not intend the Act to cover companies in the business of
regularly servicing outstanding debts, such as rents, for
others."). Neither "fiduciary obligation" nor "incidental to" is
defined in the FDCPA. <u>Id.</u>

Here, the first prong is easily resolved; a managing
agent of a condominium complex is a fiduciary under Hawaii
statutory law. Haw. Rev. Stats §§ 514A-95(c) Defendant is a
managing agent (<u>see</u> FAC ¶ 26 & Exs. A.20, A.45a) and therefore
under Hawaii law it has fiduciary obligations to the Association.

The more difficult question is whether Defendant's debt
collection activities were "incidental" to its fiduciary
relationship. The Ninth Circuit in <u>Rowe</u>, 559 F.3d 1028, stated
that "[t]he 'incidental to' requirement means that the collection
activity must not be 'central to' the fiduciary relationship."
<u>Id.</u> at 1034 (citing <u>Wilson v. Draper & Goldberg</u>, 443 F.3d 373,
377 (4th Cir. 2006)).  The court explained that "[t]he function
of this requirement is to exclude fiduciaries whose sole or
primary function is to collect a debt on behalf of the entity to
whom the fiduciary obligation is owed."  <u>Id.</u>  The court went on
to reverse a district court's granting of a motion to dismiss
under Rule 12(b)(6), finding that the face of the complaint did

not demonstrate that the defendant's debt collection actions were "incidental to" its fiduciary relationship. Id. at 1035.

Here, as in Rowe, Plaintiffs have not pleaded any facts suggesting that Defendant's debt collections were merely "incidental" to its broader fiduciary relationship with the Association. The Court therefore finds that it cannot resolve this issue of fact under Rule 12(b)(6).

**Debt In Default At The Time It Was Acquired**

If Plaintiffs' debt was not "in default" when Defendant acquired it, Defendant was not a "debt collector" and is not subject to the FDCPA. 15 U.S.C. § 1692(6)(F)(iii).

Plaintiffs repeatedly allege in their First Amended Complaint that the Debt was "in default" when Defendant acquired it. (FAC ¶¶ 25, 28.) However, in ruling on a Rule 12(b)(6) motion to dismiss, the court "is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." See Sprewell, 266 F.3d at 988 (citing Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994)).

The Ninth Circuit has stated that "[a]lthough the FDCPA does not define 'in default,' courts interpreting 15 U.S.C. § 1692a(6)(F)(iii) look to any underlying contracts and applicable law governing the debts at issue." De Dios v. Int'l Realty & Invs., 641 F.3d 1071, 1074 (9th Cir. 2011) (citing inter alia Fed

17

Trade Comm'n, Advisory Op. n. 2 (Apr. 25, 1989) ("Whether a debt is in default is generally controlled by the terms of the contract creating the indebtedness and applicable state law.")). Here, there is no controlling state law definition, and even in contexts not applicable here, Hawaii statutes leave "default" to be defined by the contract between the parties. See, e.g., Haw. Rev. Stat. § 53-16(h) (agency bonds); § 201H-19(4) (contracts with Hawaii Housing Finance & Development Corporation); §§ 356D-16 (contracts relating to public housing projects). The various Association agreements and by-laws that Plaintiffs have attached to the First Amended Complaint do not contain any provisions that define "default" or even set due dates for the monthly Association assessments.[9]

Nonetheless, case law provides some guidance. The Ninth Circuit has noted that the FDCPA's legislative history "is consistent with construing 'in default' to mean a debt that is at least delinquent, and sometimes more than overdue." De Dios, 641 F.3d at 1075 n.3. Similarly, the Second Circuit has noted, "[i]n applying the FDCPA, courts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding,

---

[9]Plaintiffs refer to "agreements for attorney's fees" which they allege would illuminate this issue and which are not before the Court. (See Opp'n at 10.) Plaintiffs seem to be referring to fee agreements between the Association and its attorneys. Plaintiffs do not explain how such agreements would determine whether Plaintiffs' debt to the Association was in default.

emphasizing that only after some period of time does an outstanding debt go into default." Alibrandi v. Fin. Outsourcing Servs., Inc., 333 F.3d 82, 86 (2d Cir. 2003).  In De Dios, the Ninth Circuit discussed with approval a case from the Southern District of New York, Franceschi v. Mautner-Glick Corporation, 22 F. Supp. 2d 250, 253 (S.D.N.Y. 1998).  In that case, the court found that "[b]ecause the property management obtained the right to collect rents . . . before the rents became due . . . the agent was not collecting a debt in default when it sent a demand letter for the remaining, disputed portion of overdue rent."  De Dios, 641 F.3d at 1075 (citing Franceschi, 22 F. Supp. 2d at 253.)

Here, Plaintiffs do not allege when the Debt was or would have become due. Nor do Plaintiffs allege the precise date that Defendant "acquired" the Debt from the Association. (FAC ¶ 25.) In fact, Plaintiffs' assertions that the Debt was "in default" when Defendant acquired it rest solely on the fact that when Defendant acquired the Debt Plaintiffs had already repudiated their obligation to pay assessments for the Association's legal fees. (See id.)

Plaintiffs' argument is unconvincing. "Default" is commonly defined as a failure to pay a debt once it has become due. See, e.g., Black's Law Dictionary (9th ed. 2009) (defining default as "The omission or failure to perform a legal or

19

contractual duty; esp., the failure to pay a debt <u>when due</u>." (emph. added)); <u>see also</u> <u>Magee v. AllianceOne, Ltd.</u>, 487 F. Supp. 2d 1024, 1027-28 (S.D. Ind. 2007) (quoting the Black's Law Dictionary definition of "default" with approval as furthering Congress's intentions in passing the FDCPA). Indeed, as the Second Circuit noted in <u>Alibrandi</u>, many judicial decisions and federal regulations "agree that default does not occur until well <u>after</u> a debt becomes outstanding." 333 F.3d at 87 (emphasis added) (citing numerous federal cases and regulations).

In this case, the allegations of the First Amended Complaint demonstrate that Plaintiffs repudiated the Debt two weeks before the legal work underlying the Debt was even done, let alone its costs assessed to Plaintiffs. (<u>See</u> FAC ¶ 23.) As in <u>Franceschi</u>, Defendant were not collecting a debt in default because Defendant "obtained the right to collect [the debt] before [it] became due." <u>De Dios</u>, 641 F.3d at 1075 (citing <u>Franceschi</u>, 22 F. Supp. 2d at 253). As the Ninth Circuit noted, "[i]t follows as a matter of logic that a debt not yet payable cannot be in default." <u>De Dios</u>, 641 F.3d at 1074. Equally, it follows as a matter of logic that a debt cannot be in default before that debt even exists.

Plaintiffs argue that their anticipatory repudiation constituted a "breach" of their obligation to pay Association assessments, and therefore a default. (Opp'n at 12.) Again, the

argument is unconvincing. Plaintiffs' anticipatory repudiation may well have constituted a breach, <u>see</u> <u>Ricketts v. Adamson</u>, 483 U.S. 1, 18 & n.9 (1987) ("In the conventional case of anticipatory repudiation . . . the announcement of an intention to default on the contract constitutes a breach.") (dicta) (citing and discussing Hochster v. De la Tour, (1853) 118 Eng. Rep. 922 (Q.B.); 2 El. & Bl. 678), but despite Plaintiffs' best efforts to conflate the two terms, Plaintiffs have cited no authority, and the Court can find none, for the proposition that an anticipatory breach puts the party breaching "<u>in default</u>."[10]

Finally, Plaintiffs argue that the section of the Association agreement which creates a lien against their property for any unpaid assessments (FAC Ex. A.10) demonstrates that they were in default. (Opp'n at 16-17.) This argument, too, is unavailing. The provision in question deals with "[a]ll sums assessed by the Association but unpaid." (FAC Ex. A.10.) In this case, Plaintiffs have not alleged that the sums in question had been assessed to them when Defendant acquired their "debt." In fact, the factual allegations of the First Amended Complaint

---

[10]/The case cited by Plaintiffs, <u>Aickin v. Ocean View Invs. Co.</u>, 935 P.2d 992 (Sup. Ct. Haw. 1997), does not support their argument. The Supreme Court of Hawai'i noted that it was using the words "default" and "breach" interchangeably "<u>[f]or the purposes of this opinion</u>", <u>id.</u> at 457 n.16 (emphasis added) – that is, not as a holding or statement of law. Moreover, the court disagreed with the trial court's conclusion that an anticipatory breach had even occurred.   <u>Id.</u> at 462 n.29.

imply the opposite: that Defendant was the first to assess the Debt against Plaintiffs. (See FAC ¶¶ 20-21, 28.)

In sum, Plaintiffs' First Amended Complaint does not contain allegations sufficient to show that Plaintiffs' Debt was in default at the time that Defendant acquired it. Plaintiffs have therefore failed to state their claims against Defendant under the FDCPA.

## Motion for Summary Judgment

In the alternative, the Court finds that Defendant's arguments also prevail under the summary judgment standard, for the same reasons.

## Collection Incidental to a Fiduciary Relationship

As discussed more fully above, the FDCPA exempts from its definition of "debt collector" an entity whose debt collection activity is "incidental to a fiduciary relationship." 15 U.S.C. § 1692a(6)(F)(i). The evidence set forth by the parties in their Concise Statements of Material Fact and exhibits preclude summary judgment on this exception to the FDCPA.

Defendant has produced and properly authenticated the Agreement between the Association and Defendant, dated March 1, 2002. (Motion CSF Ex. B.) The Agreement demonstrates that Defendant did indeed have a broader fiduciary relationship with the Association, thus satisfying the first prong of Rowe's two-prong test. See Rowe, 559 F.3d 1032. However, the facts adduced

22

by Plaintiffs again raise questions of fact as to whether
Defendant's debt collection was "incidental to" and not "central
to" its fiduciary relationship with the Association.  See id. at
1034 (citing Wilson, 443 F.3d at 377).  Specifically, Plaintiff
Charles Turner, who served on the Association's board of
directors for approximately six months (Turner Decl. ¶ 5) attests
that, notwithstanding the language of the agreement, in
actuality, Defendant's "principal dut[y]" was to collect debts
for the Association, while the Association itself "retained
nearly all of the [other] management obligations" of the
condominium project.  (Turner Decl. ¶ 5.)  Mr. Turner maintains
that Defendant's other duties were performed in service of its
debt collection.  (Id.  ¶¶ 6-7.)

        The extent and nature of the services actually
performed by Defendant for the Association constitute a "genuine
dispute as to [a] material fact," which precludes summary
judgment as to whether Defendant's debt collection activities
were merely "incidental" or in fact "central" to its fiduciary
duties.  See Fed. R. Civ. Proc. 56(a); Anderson, 477 U.S. at 250-
51 (summary judgment will be denied if "reasonable minds could
differ as to the import of the evidence").

**Debt Not in Default When Acquired**

The evidence adduced by both parties demonstrates that
there is no genuine dispute that the Debt was not in default when
Defendant acquired it.

Mr. Turner in his declaration repeats, with personal
knowledge, the relevant factual allegations of the First Amended
Complaint: on March 15, 2010, he and Mr. Guevara verbally
repudiated the payment of any attorney's fees related to the
condominium project on March 15, 2010 (Turner Decl. ¶ 14);
following that confrontation, the Association did not bill Mr.
Turner and Mr. Guevara for attorney's fees (id. ¶ 17); on March
30, 2010, an attorney billed the Association $247.00 for work
relating to the dispute with Mr. Turner and Mr. Guevara (id. ¶
18); and Defendant's bill of May 25, 2010 was the first
communication with Plaintiffs regarding the debt (id. ¶ 23.)[11]

Plaintiffs' evidence adds nothing to the allegations of
the First Amended Complaint; their claims rest on the argument
that the Debt was "in default" when Defendant acquired it because
Plaintiffs had already repudiated their obligation to pay legal
fees.  As discussed above, that argument is unconvincing.
Plaintiffs' anticipatory repudiation might have constituted a

---

[11]/Mr. Turner's declaration also includes repeated legal and
factual conclusions, notably that the Debt was already "in
default" when acquired by Defendant.  (See id. at ¶¶ 19, 23.)
The Court is not obliged to credit these conclusory statements,
and does not do so.

breach, but there is no authority for the proposition that it put Plaintiffs "in default" on their debt.  As a matter of logic, the Debt could not be "in default" before it even existed.  See De Dios, 641 F.3d at 1074.  Defendant is therefore entitled to summary judgment as to this exception to the FDCPA.

**Supplemental Jurisdiction**

The remaining claims against Defendant are all state law claims. A federal court's supplemental jurisdiction over state law claims is governed by 28 U.S.C. § 1367, and exists when "a federal claim is sufficiently substantial to confer jurisdiction and there is 'a common nucleus of operative fact between the state and federal claims.'" See Maizner v. Dep't of Educ., 405 F. Supp. 2d 1225, 1241 (D. Haw. 2006) (quoting Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995)). Once it has determined that a state law claim arises out of a common nucleus of operative facts, a district court may nevertheless decline jurisdiction over the state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367. Thus, once it is determined that a plaintiff's FDCPA claims should be dismissed, it is proper to dismiss any pendent state law claims for lack of subject matter jurisdiction. See Marschall v. Recovery Solution Specialists, Inc., 399 Fed. App'x 186, 188 (9th Cir. Oct. 5, 2010) (unpublished); Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994).

Similarly, it is appropriate for a district court to decline to exercise supplemental jurisdiction over state law claims when it has disposed of all federal claims on summary judgment.  See City of Colton v. Am. Promotional Events, Inc.-W., 614 F.3d 998, 1007 (9th Cir. 2010) (citing Bryant v. Adventist Health Sys./W., 289 F.3d 1162, 1169 (9th Cir. 2002)).

Here, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims because it has dismissed or disposed of all claims over which it had original jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion To Dismiss and, in the alternative, Motion For Summary Judgment. Plaintiffs' First Amended Complaint is dismissed in its entirety without prejudice. Finally, Plaintiffs also moved for summary judgment. (Doc. No. 53.) That motion is DENIED as moot.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 15, 2012.



_____
Alan C. Kay
Sr. United States District Judge

Turner v. Hawaii First, Inc, Civ. No. 11-00332 ACK-BMK, Order Granting
Defendant's Motion To Dismiss and in the Alternative Motion for Summary
Judgment and Denying as Moot Plaintiffs' Motion for Summary Judgment.